# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Robert Marsh,

        Debtor.

Chapter 7

Bankruptcy Case No. 18-43273

Madison Resource Funding Corp.,

        Plaintiff,

v.

Robert Marsh,

        Defendant.

Adversary Proceeding No. 18-04198

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

At Saint Paul, Minnesota.

This adversary proceeding was commenced December 12, 2018, by Plaintiff Madison Resource Funding Corp. ("Madison") against Defendant Robert Marsh. Dkt. No. 1. Madison sought a determination that a debt owed to Madison in the amount of $1,679,629.63 plus attorney's fees and interest is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Dkt. No. 1. Madison alleged Jerry Marsh made misrepresentations and omitted material facts concerning the relationship between Synico Staffing, LLC ("Synico") and Syglo, LLC ("Syglo") to Madison in furtherance of a conspiracy and agreement with Robert Marsh to defraud Madison into advancing funds to pay Syglo's temporary employees. Dkt. No. 1.

The case was assigned to this Court on December 20, 2019.  The case proceeded to trial on Count I of the Complaint on February 26-27, 2020. Counts II and III of the Complaint were dismissed by stipulation of the parties.  Dkt. No. 64. Paul Ratelle and Alexander Conti appeared

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *09/30/2020*
Lori Vosejpka, Clerk, by WM

for the Plaintiff; Matthew Fling appeared for the Defendant. This trial was preceded by the trial in Madison Resource Funding Corp. v. Jerry Marsh, Adv. No. 16-03127 (Bankr. D. Minn. Feb. 25-26, 2020). All evidence admitted during the trial of Madison Resource Funding Corp. v. Jerry Marsh was admitted in this adversary proceeding. The evidence admitted included the following: testimony of Melody Smith; Amanda Naples; Mary (Molly) McQuillen; Robert Gilbert, Jr.; John Carney; Richard Chipman; and Jerry Marsh; exhibits 1-13; 15-28; 31-33; 38-42; 45-54; 56; 58; 60-61; 63-72; 74-81; 83-86; 89-94; 97-110 (101 as amended); 112-114; 117; 136; 146; 148; 150-158; and the deposition of Mark Anthony Sawicki. The Court also admitted facts 1 through 9 listed on Madison's request for "judicial notice" after no objection was made to the request. Dkt. No. 71.

Additional evidence was admitted in this adversary proceeding that was not admitted in Madison Resource Funding Corp. v. Jerry Marsh. That evidence includes the following: testimony of Robert Marsh and additional testimony of Jerry Marsh; and exhibits 121-128; 131; 133-135; 137-142; 144; 147; 149; 159. The Court also admitted facts 1 through 6 listed on Madison's request for judicial notice after no objection was made to the request. Dkt. No. 71. Closing arguments for both cases followed the close of evidence in this trial on February 27, 2020.

At the request of Madison, the Court permitted the parties to file post-trial submissions concerning the evidence presented at trial. Dkt. Nos. 82-83. Following these submissions on March 6, 2020 and March 20, 2020, the Court took Madison's motion in limine, Robert Marsh's motion to admit Provisional Exhibits A and B, and the merits of the case under advisement.

On May 12, 2020 the Court ordered Robert Marsh to show cause as to why the Court should not find he is in civil contempt of Court for violating the Court's discovery order. Dkt. No. 84. The parties agreed to continue mediation in both Marsh cases on May 26, 2020 at the show-cause

hearing, and the mediator requested that no action be taken by the Court during the mediation. An impasse was reported on September 30, 2020. The Court makes the following findings of fact and conclusions of law and holds the debt owed to Madison is not dischargeable.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, Fed. R. Bankr. P. 7001, and Local Rule 1070-1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Findings of Fact

1. The findings of fact in the Findings of Fact, Conclusions of Law, and Order in <u>Madison Resource Funding Corp. v. Jerry Marsh</u>, Adv. No. 16-03127, are adopted in their entirety and incorporated herein. The Court does not adopt in this case the requests for admission deemed admitted by Jerry Marsh.

2. Jerry Marsh's debt owed to Madison in the amount of $1,676,162.20, plus prejudgment interest and attorney's fees, for breach of contract and fraud is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

**Computers belonging to Synico**

3. Robert Marsh testified that he turned over the specific computers requested by the bankruptcy trustee in Synico's bankruptcy, but this was not all of Synico's computers and he does not recall what happened to the remaining computers. Ex. 146. Robert Marsh testified that he asked the trustee if he wanted the information stored on Synico's servers and was told that the trustee was not interested in the servers and only wanted the computers.

4.  During trial, only in response to questioning by Madison's attorney, Robert Marsh testified that he had disks made of the Synico computers before they were handed over to the trustee, and those disks are in his possession.  (All computer equipment of Synico was abandoned by the trustee in September 2017, prior to the commencement of this adversary proceeding. In re Synico Staffing, No. 16-4371 (Bankr. D. Minn. Aug. 16, 2017) Dkt. No. 153.)  Robert Marsh did not provide the disks to Madison during discovery or at any time prior to his testimony.

**Madison Makes A Request For Admissions**

5.  Madison sent requests for admission to Robert Marsh's address in February 2019 as part of this adversary proceeding. Ex. 149; test. of Robert Marsh. It is undisputed they was sent to the proper address.

6.  Robert Marsh testified he did not recall receiving the requests for admission and he was pro se at the time they were sent. It is undisputed no responses were ever made. Dkt. No. 88.

7.  Robert Marsh retained counsel who was aware of Robert Marsh's failure to respond to the requests for admission no later than February 18, 2020, but made no motion to amend (or allow responses to) the admissions.

**Ultimate Facts Regarding Robert Marsh's Involvement In A Conspiracy**

8.  Robert Marsh conspired with Jerry Marsh to intentionally deceive Madison into providing funding to Syglo.

9.  Robert Marsh and Jerry Marsh agreed that Jerry Marsh would conceal the subvendor agreement between Synico and Syglo and that Syglo did not have a direct contractual relationship with U.S. Bank/Bartech.

4

10. Jerry Marsh, in furtherance of the conspiracy, did conceal the subvendor agreement and misrepresented to Madison that Syglo had a direct contractual relationship with U.S. Bank/Bartech.

11. As a result of actions taken in furtherance of the conspiracy, Madison was damaged in the amount of $1,676,162.20 in advances made on staffing services provided to U.S. Bank/Bartech and $3,467.00 in advances made on staffing services provided to Cargill/Ardent Mills.

## <u>Discussion</u>

## I.    **The Court Denies As Untimely Madison's Request For Sanctions Related To Spoliation Of Evidence.**

On February 19, 2020, approximately one week before trial, Madison filed an expedited motion in limine seeking an adverse inference instruction for intentional spoliation of evidence intended to deprive Madison of information necessary for this adversary proceeding.  Dkt. No. 72. Madison alleged that Synico owned 25 computers at the time it filed for bankruptcy, and that Robert Marsh failed to preserve the computers or intentionally removed information from the computers prior to turning the computers over to the trustee of Synico's bankruptcy estate. Madison argued that the Court should presume the destroyed information on the computers was "unfavorable" to Robert Marsh and "showed that [Robert Marsh] was indeed involved in . . . [Jerry Marsh's] scheme to defraud Madison out of $1.6 million."  Dkt. No. 72 at 10.  At trial, the Court took the motion under advisement and allowed Madison to present evidence concerning computers owned by Synico and Madison's attempt to extract electronically stored data from the computers.

For the same reasons cited in the Findings of Fact, Conclusions of Law, and Order in <u>Madison Resource Funding v. Jerry Marsh</u>, Adv. No. 16-03127, the Court denies the request for sanctions related to the computers owned by Synico.

5

## II.      The Court Will Not Admit Provisional Exhibit A and Provisional Exhibit B.

Robert Marsh provided two printed copies of emails to counsel for Madison after he was questioned on whether he had any documents proving communications between Synico and Madison employees regarding a paybill report of Syglo. Paybills are how Madison determined how much to pay to Syglo's temporary employees. Robert Marsh explained that disks were made of Synico's computers sent to the trustee and that the emails were on those disks. Robert Marsh possessed the disks at his home, but did not disclose them during discovery.  He testified he had forgotten about the disks until the night before his second day of testimony.  He sought to admit two printed emails that he testified were on those disks.

Madison objected to admission of the undisclosed emails and to any testimony regarding the documents on the grounds of failure to disclose, lack of foundation, relevance, the proposed exhibits were not included on the exhibit list and they were not offered for rehabilitation.  Counsel for Robert Marsh responded that Madison was not prejudiced by the late disclosure and admission of the exhibits because the emails indicated Madison would have had access to the emails through their own employees.  The Court took the objections to the admissibility of the proposed exhibits and any testimony regarding them under advisement.  The exhibits were provisionally admitted as exhibits A and B pending the Court's ruling.

Federal Rule of Civil Procedure 37(b)(2)(A) permits the Court to sanction a party if the party "fails to obey an order to provide or permit discovery."  Likewise, Fed. R. Civ. P. 16(f)(1)(C) permits sanctions if a party "fails to obey a scheduling or other pretrial order."  Sanctions may include, but are not limited to:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

In this case, Madison moved to compel discovery responses and produce documents. Dkt. No. 21. The parties filed a stipulation with the Court (J. Constantine), wherein Robert Marsh agreed to respond to Madison's discovery requests and produce documents and consented to the entry of an order granting the motion to compel. Dkt. Nos. 36, 37. The Court (J. Constantine) subsequently entered an order compelling Robert Marsh to serve all responses to Madison's written discovery demands and to "produce all responsive documents in his possession, custody or control" by October 21, 2019. Dkt. No. 39.

The proposed exhibits, Provisional Exhibit A and Provisional Exhibit B, were not disclosed to Madison until the second day of trial. Robert Marsh blamed a memory lapse for his failure to disclose the disks at an earlier time, but testified that he recalled the disks upon further reflection. This further reflection should have occurred at an earlier stage in the proceedings, especially considering the disks were in the possession, custody, and control of Robert Marsh throughout the pendency of this case. The failure of Robert Marsh to disclose the data or documents stored on the disks until the second day of trial and after he had already faced examination by Madison cannot be said to be substantially justified or harmless. See Fed. R. Civ. P. 37(c)(1) (permitting the exclusion of evidence for failure to disclose under Fed. R. Civ. P. 26(a) and (e) unless the failure was "substantially justified" or "harmless"). Madison was denied the ability to view the

disks in preparation for trial or to question their own witnesses concerning the subject matter of the proposed exhibits. Madison, however, did not request a continuance to view the disks, but rather requested the evidence not be admitted.

The Court, pursuant to Fed. R. Civ. P. 37(B)(2)(A)(ii), concludes that the exclusion of Provisional Exhibit A and Provisional Exhibit B and all testimony regarding those exhibits is an appropriate sanction in this matter.  It is also the remedy sought by Madison in its objection to the admission of the proposed exhibits and testimony.

The Court ultimately does not consider Robert Marsh's testimony that he had communications with Madison and Ms. Smith and Madison knowingly communicated with Synico employees to be credible in light of the testimony and evidence provided by Madison and its employees.  Even if the Court admitted Provisional Exhibit A and Provisional Exhibit B, which it does not, the Court would find they hold little evidentiary value because the documents do not demonstrate that the Madison employees knew about the Synico-Syglo subvendor relationship.

The exclusion of this evidence does not foreclose the Court's ability to further sanction Robert Marsh upon a civil contempt finding for failing to abide by a court order.  A finding of civil contempt and sanctions related to that will be addressed by separate proceedings. Dkt. No. 84.

III.     **The Unanswered Requests For Admission Are Admitted As Facts.**

Robert Marsh was served with requests for admission while pro se. Ex. 149. It is undisputed that he failed to respond to these requests. Dkt. No. 88.  His counsel appeared in the case on May 13, 2019. Dkt. No. 23. At the latest, counsel for Jerry Marsh had to become aware of the failure to respond at the time of the pretrial submissions on February 18, 2020. Dkt. No. 62 at 9-11. The proposed findings of fact for Madison clearly cited Robert Marsh's failure to respond to the requests for admission as support for a judgment in its favor. Dkt. No. 62.

8

Federal Rule of Civil Procedure 36(a)(3), as incorporated by Federal Rule of Bankruptcy Procedure 7036, provides: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Further, "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b) (emphasis added). "[W]hen a party has made no filing that could be construed as a motion to withdraw or amend an admission, the court is required to give the admission conclusive effect." Stine Seed Co. v. A & W Agribusiness, LLC, 862 F.3d 1094, 1102 (8th Cir. 2017); see Quasius v. Schwan Food Co., 596 F.3d 947, 950-52 (8th Cir. 2010). "An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the . . . court . . . . Mere trial testimony [does] not constitute a motion . . . ." AAA v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1120 (5th Cir. 1991); see Fed. R. Civ. P. 36(b) advisory committee's note to 1970 amendment; Airco Indus. Gases, Inc. Div. of BOC Grp., Inc. v. Teamsters Health & Welfare Pension Fund, 850 F.2d 1028, 1035-37 (3d Cir. 1988).

Some courts recognize that to be established against a pro se litigant, the self-represented individual must be made aware of the consequences of a failure to respond to the requests for admissions. See Medina v. Donahoe, 854 F. Supp. 2d 733, 748 (N.D. Cal. 2012); Citibank (S.D.), N.A. v. Savage (In re Savage), 303 B.R. 766, 773 (Bankr. D. Md. 2003); United States v. Turk, 139 F.R.D. 615, 617-18 (D. Md. 1991) (noting a reluctance to use Rule 36 procedures as a snare for an "unwary pro se defendant"); see also United States v. Renfrow, 612 F. Supp. 2d 677, 682-83 (E.D.N.C. 2009). See generally McGowan v. Prince George's Cty., 401 F. Supp. 3d 564, 570-71 (D. Md. 2019); Warren v. Cybulski, 556 B.R. 429, 436 (N.D. Cal. 2016); Burger v. Hartley, 896 F. Supp. 2d 1157, 1166 n.7 (S.D. Fla. 2012).

Although in this case Robert Marsh was pro se at the time the requests were made, he obtained counsel who was aware of the failure to respond at the latest by February 18, 2020. His counsel failed to respond to the requests for admission and never moved to seek release from the admissions even if Robert Marsh was not aware of the consequences at the time he did not answer the requests. Federal Rule of Civil Procedure 36(b) provides that "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Pursuant to this rule, courts have granted a motion to withdraw admissions where counsel learned that there was a failure to respond by the litigant while pro se. See United States ex rel. Graybar Elec. Co. v. TEAM Constr., LLC, 275 F. Supp. 3d 737, 745-46 (E.D.N.C. 2017); CFTC v. Int'l Fin. Servs., 323 F. Supp. 2d 482, 506 (S.D.N.Y. 2004) (granting the motion to withdraw and allowing proposed answers to be substituted for the default admissions); Simien v. Chem. Waste Mgmt., Inc., 30 F. Supp. 2d 939, 941-42 (W.D. La. 1998). Here, counsel for Robert Marsh could have made such a motion before or at trial to withdraw or amend the admissions. Madison would then have had the opportunity to oppose it. But, no motion or anything that could be construed as a motion was ever made. Further, contrary trial testimony does not constitute a motion. See AAA Legal Clinic of Jefferson Crooke, 930 F.2d at 1120. As a result, this Court has no choice but to deem the requested admissions numbers 1-60 and 64 as admitted and adjudged as findings of fact.[1] The Court finds Robert Marsh's admissions in this case only, and does not

---

[1] Requests for Admission numbers 62-63 relate to dismissed counts in the Amended Complaint. Requests for Admission numbers 64 and 65 relate to interest and attorney's fees discussed below. Request 64 relates to the availability of attorney's fees and is admitted, but 65 relating to the date of interest accrued has been modified by Madison in pleadings (Dkt. No. 62).

consider Jerry Marsh's admissions in this case. Robert Marsh's admissions meet the requirement of section 523(a)(2)(A) as discussed below (Section IV).

Madison's Requests for Admission number 61 requests Robert Marsh admit the debt is not dischargeable under 11 U.S.C. § 523(a)(2)(A). Federal Rule of Civil Procedure 36(a)(1)(A) provides, "A party may serve on any other party a written request to admit . . . facts, the application of law to fact, or opinions about either." The rule "serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Fed. R. Civ. P. 36(a) advisory committee's note to 1970 amendment. For example, in McSparran v. Hanigan, 225 F. Supp. 628, 630 (E.D. Pa. 1963), the disputed issue was vicarious liability of an employer for the workers compensation statute with an element that the premises were controlled by the employer. In the case, the defendant admitted, "At the time of the accident in suit, the premises on which said accident occurred, were occupied or under the control of defendant." McSparran, 225 F. Supp. at 636. "This admission, involving law as well as fact, removed one of the issues from the lawsuit and thereby reduced the proof required at trial;" and, therefore, it is an authorized request for admission under the rule. Fed. R. Civ. P. 36(a) advisory committee's note to 1970 amendment; see also Wagner v. St. Paul Fire & Marine Ins. Co., 238 F.R.D. 418, 423-24 (N.D.W. Va. 2006) (recognizing a straightforward application of law to fact is "to admit that if a certain factual situation is found to exist, a certain legal outcome results"); Thompson v. Beasley, 309 F.R.D. 236, 239-51 (N.D. Miss. 2015) ("[F]or a legally-related request to be deemed admitted . . . , it must connect the relevant legal proposition to specific facts and circumstances of the case.").

On the other hand, the rule "does not authorize requests for admissions of law unrelated to the facts of the case." Fed. R. Civ. P. 36(a) advisory committee's note to 1970 amendment; 20 Charles Alan Wright & Mary Kane Kay, <u>Federal Practice and Procedure</u> § 95 (2d ed. 2019) (recognizing that the scope of Rule 36(a) does not include a "pure matter of law."); <u>see</u> <u>Abbott v. United States</u>, 177 F.R.D. 92, 93 (N.D.N.Y. 1997).

Further, "[a] party may not request an admission of a legal conclusion under Rule 36 . . . ." <u>Tobkin v. Fla. Bar (In re Tobkin)</u>, 578 F. App'x 962, 964 (11th Cir. 2014); <u>United States v. Petroff-Kline</u>, 557 F.3d 285, 293 (6th Cir. 2009); <u>Warnecke v. Scott</u>, 79 F. App'x 5, 6 (5th Cir. 2003); <u>Thompson</u>, 309 F.R.D. at 241; <u>Coach, Inc. v. Horizon Trading USA Inc.</u>, 908 F. Supp. 2d 426, 432-33 (S.D.N.Y. 2012); <u>Stark-Romero v. AMTRAK Co.</u>, 275 F.R.D. 551, 554 (D.N.M. 2011).

For example, in <u>Tobkin</u>, 578 F. App'x at 963, the plaintiff brought an adversary proceeding against a debtor in a bankruptcy pursuant to 11 U.S.C. § 523(a)(7), which excepts from discharge a debt to the extent it "is a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit." (quotation omitted). In the case, the plaintiff admitted "that it is not a 'government entity.'" 578 F. App'x at 964. The court held the admission is not authorized under Rule 36 because it is a legal conclusion. <u>Id.</u>

Here, as in <u>Tobkin</u>, Madison has also brought a non-dischargeability action pursuant to section 523, but under subsection (a)(2)(A), which excepts from discharge a debt "for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." For the Request for Admission number 61, Robert Marsh admitted that his debt to Madison in the amount of $1,679,629.00 is a non-dischargeable debt pursuant to section 523(a)(2)(A). Similar to <u>Tobkin</u>, this admission may be a legal conclusion that is not authorized under Rule 36. On the other hand,

a case can be made that request 61 is the application of fact in this case to law (523(a)(2)(A)) which is permissible.

Since the other admissions (1-60) are within the scope of the rule as requests to admit facts or the application of law to fact and meet the elements of section 523(a)(2)(A), the Court need not decide the issue as to whether number 61 is a legal conclusion. See Hernandez v. Gen. Mills Fed. Credit Union (In re Hernandez), 860 F.3d 591, 602 (8th Cir. 2017) ("Whether a requisite element of a claim under § 523(a)(2)(A) has been satisfied is a factual determination . . . .") (quoting Freier, 604 F.3d at 587); see Fields, 510 B.R. at 233; In re Juve, 761 F.3d at 852.

### IV.   Madison Established A Non-dischargeable Debt Under State Law And 11 U.S.C. § 523(a)(2)(A) By Robert Marsh's Failure to Respond To Madison's Requests For Admission.

This Court determined that Madison proved by a preponderance of the evidence that Jerry Marsh made false representations to Madison regarding its subvendor relationship with Synico, and that the debt caused by those false representations is non-dischargeable pursuant to section 523(a)(2)(A).  The Court's analysis of this issue in Madison Resource Funding Corp. v. Jerry Marsh, Adv. No. 16-03127, is incorporated into this opinion by reference. The Court found that Jerry Marsh did not disclose Syglo's subvendor relationship with Synico to Madison and falsely represented to Madison that Syglo had a direct customer relationship with U.S. Bank/Bartech.  The Court found that Jerry Marsh made these representations and omissions with the intent to deceive Madison and to induce Madison to finance Syglo's temporary staff at U.S. Bank/Bartech.  On the basis of the false representations of Jerry Marsh, Madison provided funding for Syglo's U.S. Bank/Bartech temporary employees and was damaged in the amount of $1,676,162.20.  On the basis of these facts, the Court determined that Jerry Marsh breached his contract with Madison and made material misrepresentations for the purposes of section 523(a)(2)(A), which also was

sufficient to prove that Jerry Marsh committed the tort of intentional misrepresentations under Minnesota law.

Madison did not allege, nor did the evidence prove at trial, that Robert Marsh directly made false representations to Madison.  Therefore, Madison was required to establish both that Robert Marsh owes it a debt under state law and that the debt is non-dischargeable under section 523(a)(2)(A).  See In re Reuter, 686 F.3d at 518 (stating that liability for a debt is established under state law but non-dischargability of the debt is determined under federal law).

### A.  Madison Established A Debt For Purposes of 11 U.S.C. § 523.

To except a debt from discharge under any part of 11 U.S.C § 523(a)(2)(A), there must be a "debt." Reuter v. Cutcliff (In re Reuter), 686 F.3d 511, 515-16 (8th Cir. 2012); Hernandez v. Sulier (In re Sulier), 541 B.R. 867, 877 (Bankr. D. Minn. 2015) ("In order to prove that the debt is nondischargeable, the plaintiff here must first establish that the defendant owes him a debt."). Section 101(12) of the Bankruptcy Code defines "debt" as "liability on a claim."  The term "claim" is defined as a "right to payment" under 11 U.S.C. § 101(5)(A). As the Supreme Court has stated, a debt "is nothing more nor less than an enforceable obligation." Cohen v. De La Cruz, 523 U.S. 213, 218 (1998); see also Reuter, 686 F.3d at 515-16 (finding an uncontested proof of claim meets the requirement of a "debt" for purposes of section 523(a)(2)(A)); Sulier, 541 B.R. at 877 (finding that an undisputed claim listed by the defendant on the schedules is sufficient to find that the defendant owed a debt to the plaintiff and then inquiring whether the scheduled debt was non-dischargeable). Once a debt of any kind has been established, section 523(a)(2)(A) requires proof that this debt was obtained by fraud.

Here, Robert Marsh scheduled Madison's debt on Schedule E/F in his bankruptcy case as $2,000,000.00 for "Receivable, payroll processing and billing services provided to Synico

Staffing." In re Robert Marsh, Case No. 18-43273 (Bankr. D. Minn. Nov. 1, 2018), Dkt. No. 11

at 20. He did not list the debt as disputed. The undisputed claim is sufficient to determine that

Robert Marsh owed a debt to Madison.

However, even if the undisputed claim is insufficient to prove a debt, Madison has

successfully established that Robert Marsh is vicariously liable for damages caused by his

conspiracy with Jerry Marsh to make false representations to Madison.  Numerous courts have

recognized that a debtor may be bound by the fraud of another person. In re Huh, 506 B.R. 257,

265-66 (B.A.P. 9th Cir. 2014);  In re Buck, 75 B.R. 417, 420-21 (Bankr. N.D. Cal. 1987);

Casablanca Lofts LLC v. Abrham, 436 B.R. 530, 537 (N.D. Ill. 2010) (imputing the fraud of a

partner to the debtor); Love v. Smith (In re Smith), 98 B.R. 423, 426 (Bankr. C.D. Ill. 1989).

Generally, vicarious liability occurs in cases where a debtor is liable under agency or partnership

principles.  In re Miller, 276 F.3d 424, 429 (8th Cir. 2002); see Strang v. Bradner, 114 U.S. 555,

561 (1885) (imputing fraud of one partner to other partners "who were not themselves guilty of

wrong" but "received and appropriated the fruits of the fraudulent conduct of their associate in

business").

Madison argues that Jerry Marsh's false representations should be imputed to Jerry

Marsh under a theory that they were engaged in a joint venture or were co-conspirators under

Minnesota's civil conspiracy law.  State law determines whether the debtor is liable for the acts

of another under agency or partnership principles.  See In re Reuter, 686 F.3d at 517 (applying

Missouri law).

## A.  Madison established a conspiracy under Minnesota law.

Minnesota law requires a party claiming liability under a civil conspiracy theory to

establish that  two or more people worked together to accomplish an unlawful purpose or a lawful

act by unlawful means. <u>Harding v. Ohio Cas. Ins. Co.</u>, 41 N.W.2d 818, 824 (Minn. 1950). Civil conspiracy requires the individuals to have a meeting of the minds regarding the plan or purpose of action to achieve a certain result. <u>Bukowski v. Juranek</u>, 35 N.W.2d 427, 429 (Minn. 1948). The conspiracy claim must be supported by an underlying tort. <u>D.A.B. v. Brown</u>, 570 N.W.2d 168, 172 (Minn. App. 1997). "The true office of allegations of conspiracy is to show facts for vicarious liability of defendants for acts committed by others . . . . " <u>Harding</u>, 41 N.W.2d at 825.

### 1.  Underlying Tort

The Court has found that Jerry Marsh's debt to Madison arose from a contractual obligation wherein Madison advanced funds in reliance on false representations made by Jerry Marsh. In concluding that the false representations satisfied section 523(a)(2)(A) for purposes of non-dischargeability, the Court also found that the elements of the tort of intentional misrepresentation under Minnesota law were met. This satisfies the requirement of an underlying tort for which Robert Marsh may be vicariously liable under a theory of civil conspiracy. See <u>D.A.B.</u>, 570 N.W.2d at 172.  Robert Marsh also admitted in his request for admissions that Jerry Marsh made intentional misrepresentations to Madison for the purpose of enticing Madison into entering into a funding agreement with Syglo and that Madison was damaged thereby. Req. for Admis. 18-19; 37-38; 51-52. Through his request for admissions, Robert Marsh acknowledges Jerry Marsh committed the underlying tort.

### 2.  Meeting Of The Minds

The following admissions establish that Robert Marsh and Jerry Marsh had an agreement to achieve financing from Madison by intentionally misrepresenting the relationship between Synico and Syglo and the nature of Syglo's relationship with the staffing customers.

16

- Robert Marsh and Jerry Marsh decided to use Syglo to obtain funding for Synico Staffing from Madison. Req. for Admis. 7; 27.

- Robert Marsh and Jerry Marsh knew that if they disclosed to Madison that Syglo was a subvendor to Synico Staffing, Madison would not have entered into a funding agreement with Syglo. Req. for Admis. 18.

- Robert Marsh and Jerry Marsh conspired and agreed that Jerry Marsh would conceal from Madison the fact that Synico had the direct contractual relationship with staffing customers and that a subvendor agreement existed between Synico and Syglo.  Req. for Admis. 12; 14; 16.

- Robert Marsh and Jerry Marsh conspired and agreed that Jerry Marsh would falsely represent to Madison that U.S. Bank was Syglo's customer and that Syglo had a direct contractual relationship with U.S. Bank. Req. for Admis. 29-30.

- Robert Marsh and Jerry Marsh conspired and agreed that Jerry Marsh would conceal from Madison that Syglo was supplying temporary staff to U.S. Bank as a subvendor to Synico. Req. for Admis. 32.

### 3.  Concerted Acts

"In establishing a conspiracy, it is enough if the circumstances shown warrant an inference of concerted conduct." Nathan v. Saint Paul Mut. Ins. Co., 86 N.W.2d 503, 509 (Minn. 1957). The admissions provide sufficient inferences of concerted acts between Jerry Marsh and Robert Marsh in furtherance of their goal to achieve financing from Madison through intentional misrepresentations.  These concerted acts include the following:

- Robert Marsh informed Jerry Marsh that Madison had contacted Synico and offered its services and together they agreed that Jerry Marsh would respond to Madison through Syglo.  Req. for Admis. 1-3.

- Robert Marsh and Jerry Marsh conspired and agreed that Jerry Marsh would misrepresent to Madison during the funding application process that Syglo had a direct contractual relationship with the staffing customers, an act Jerry Marsh undertook in furtherance of the conspiracy.  Req. for Admis. 8-9.

- Jerry Marsh, in furtherance of the conspiracy with Robert Marsh, concealed from Madison the existence of a subvendor agreement between Synico and Syglo and that Synico had the direct contractual relationship with staffing agencies. Req. for Admis. 13; 15; 17.

- Robert Marsh and Jerry Marsh conspired and agreed that Jerry Marsh would falsely represent to Madison that U.S. Bank was Syglo's customer and that Syglo had a direct contractual relationship with U.S. Bank. Req. for Admis. 29-30.

As discussed above and in the Findings of Fact, Conclusions of Law, and Order in Madison Resource Funding v. Jerry Marsh, Adv. No. 16-03127, Madison established that Jerry Marsh's debt to Madison was the result of false representations under section 523(a)(2)(A), the proof of which also satisfied the Minnesota tort of intentional misrepresentations.  This was also established by Robert Marsh's admissions that Jerry Marsh made intentional misrepresentations to Madison as part of a conspiracy with Robert Marsh.  Req. for Admis. 30. As Madison has met its burden of proving that Robert Marsh was involved in a conspiracy with Jerry Marsh to commit the tort of intentional misrepresentations, it follows that Robert Marsh is liable for the debt of Jerry Marsh and that the debt is non-dischargeable under the theory of imputation.

### B. The Debt Is Non-dischargeable Under Imputation Of Fraud.

Under Eighth Circuit precedent the acts of one person may be imputed to another for non-dischargeability.  In the Eighth Circuit, imputation of fraud for purposes of non-dischargeability is not permitted unless "accompanied by proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud." In re Walker, 726 F.2d 452, 454 (8th Cir. 1984). The creditor bears the burden to prove a partnership and that the debtor "knew or should have known of his partner's fraud" or was "recklessly indifferent" to the acts of his partner.  In re Treadwell, 637 F.3d 855, 860 (8th Cir. 2011); In re Reuter, 686 F.3d at 518 ("We have required at least recklessness on the part of a debtor to whom a partner's fraud is imputed in order to render such a debt non-dischargeable under § 523(a)(2)(A))."

Here, the admissions demonstrate that Robert Marsh knew of Jerry Marsh's fraudulent intent and actively conspired with Jerry Marsh to damage Madison. Because Robert Marsh was a willing participant in Jerry Marsh's fraudulent acts, his debt is non-dischargeable under section 523(a)(2)(A).

### C. Joint Venture

Madison has established the elements of civil conspiracy for purposes of establishing Robert Marsh's liability for the debt of Jerry Marsh to Madison. Because Madison has established Robert Marsh's involvement in a civil conspiracy, the Court need not determine whether Madison has satisfied the elements of a joint venture under Minnesota law.

### V.   Madison Is Entitled To Its Full Debt.

Robert Marsh argued that Madison failed to prove the amount of damages it suffered as a result of the conspiracy to defraud Madison. Robert Marsh argued the correct measure of loss under Minnesota law is "out-of-pocket" damages and not "benefit-of-the-bargain" damages.

Essentially, Robert Marsh argued Madison is not entitled to the profits it would have realized under the Master Agreement between Syglo and Madison and is only entitled to damages for funds actually expended and unrecovered. Robert Marsh also argued that Madison cannot recover money advanced after it discovered the fraud, citing Clements Auto Co. v. Service Bureau Corp., 444 F.2d 169 (8th Cir. 1971).

### A.   Robert Marsh Admitted The Amount of Damages.

Robert Marsh admitted he owes a debt to Madison related to funds advanced to U.S. Bank. $1,676,162.00.  Req. for Admis. 25-38. He also admitted he owed $3,467.00 for funds advanced to Cargill/Ardent Mills.  Req. for Admis. 39-52.  In total, Robert Marsh admitted that he owes a debt to Madison in the amount of $1,679,629.00.  Req. for Admis. 61. Madison did not pursue this amount at trial, presenting testimony and exhibits almost exclusively regarding the funds advanced to U.S. Bank. It is unclear if Madison seeks the relatively small additional amount related to Cargill/Ardent Mills.

### B.   Madison Did Not Advance Funds After It Learned Of The Fraud.

Robert Marsh, relying on Clements Auto Co., argued that Madison should not be able to recover any money because Madison employees were aware of the facts Madison now allege constituted fraud. However, this Court rejected the argument that Madison employees knew of the subvendor relationship with Synico or that U.S. Bank/Bartech was not Syglo's direct customer. Madison was not aware of the fraud at any point before May 18, 2016, if not until later in May 2016 or early June 2016 when a meeting was held between Madison and Jerry Marsh to discuss the account irregularities. The evidence is that Madison had stopped funding Syglo on the U.S. Bank/Bartech account at that time. Ex. 33.  The only evidence is that no money was advanced after the discovery of fraud in this matter. Therefore, Clements Auto Co. is not applicable.

### C.  Minnesota's "Out Of Pocket" Rule Does Not Apply.

Robert Marsh also argued that Madison failed to prove the amount it was actually damaged, arguing the amounts depicted on exhibit 33 included profits which Madison should not be entitled to under Minnesota's "out-of-pocket" rule for damages resulting from fraud. Dkt. No. 54. Robert Marsh's argument ignores the proper interpretation of 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) states, "A discharge . . . does not discharge an individual debtor from any debt . . . obtained by . . . false pretenses, a false representation, or actual fraud . . . ." Section 101(12) of the Bankruptcy Code defines the term "debt" as "liability on a claim." The term "claim" means "a right to payment" as further defined in 11 U.S.C. § 101(5)(A). Madison has an undisputed claim against Robert Marsh in the amount of $1,676,162.20 as a result of his conspiracy with Jerry Marsh to defraud Madison. The full amount, as a debt owed as a result of fraud, is non-dischargeable under section 523(a)(2)(A).

The out-of-pocket rule of damages in Minnesota, which Robert Marsh argues is the proper measure of damages, arose and was refined from cases involving fraud and misrepresentations regarding property, as opposed to misrepresentations regarding financing agreements. There are no Minnesota cases on point. See Lewis v. Citizens Agency of Madelia, Inc., 235 N.W.2d 831, 835 (Minn. 1975) ("All the cases applying the rule to date have involved misrepresentations in the sale of goods, the sale of real property, or the procuring of leases."). The rule seeks to compensate a plaintiff for damages that were actual out-of-pocket losses rather than prospective gains, but the Supreme Court of Minnesota has also stated that a "plaintiff may recover for any injury which is the direct and natural consequence of his acting on the faith of defendant's representations." Id. at 835; see B.F. Goodrich Co. v. Mesabi Tire Co., 430 N.W.2d 180, 182-84 (Minn. 1988). To the extent that the out-of-pocket rule may apply to the damages resulting from Robert Marsh and Jerry

Marsh conspiracy to make fraudulent representations to induce Madison to continue to advance funds on the U.S. Bank/Bartech account, courts have found that earned or future profit may be a consequential damage recoverable for fraudulent representations. Lowrey v. Dingmann, 86 N.W.2d 499, 503 (Minn. 1957); Sports Page, Inc. v. First Union Mgmt., Inc., 438 N.W.2d 428, 433 (Minn. Ct. App. 1989) ("Lost future profits are recoverable when they are established with reasonable certainty."). In this case, there was an agreed upon percentage fee in the Master Agreement which constituted Madison's profit for advanced funds. Once those funds were advanced, Syglo was obligated to pay the percentage fee. Madison's profit on funds advanced, therefore, qualify as a consequential damage under the out-of-pocket rule. Robert Marsh's arguments that Madison is unable to recoup its profit fail.

In any event, Robert Marsh seems to believe that because there were a series of loan advances on each payroll, he can offset Madison's profits from the earlier advances that were paid by Syglo against the final debt. He cites no Minnesota case law or statutory support for this theory. The misrepresentations caused the final advances to be unpaid. Minnesota law, even under his interpretation, does not allow a "credit" for profit from previous paid advances or loans to be applied against the final unpaid loan. At most, under his theory, lost profit would have to be backed out of the final $1,676,162.20 claim related to U.S. Bank. That amount would be 10% of the 4% fees (or .4%) of the debt (testimony of Richard Chapman) or $6,704.65.

Even if Robert Marsh's interpretations of section 523(a)(2)(A) and Minnesota law is correct and the profit from previous paid advances could offset the final unpaid advance or advances, this Court could simply find the debt is non-dischargeable and leave it for further state court proceedings to establish the amount of the debt. There is no question if all past profit were backed out of the debt, the debt would still be a very high figure based on the bank records in

evidence. See Oliver v. Zimmerman (In re Zimmerman), 567 B.R. 521, 529 (Bankr. N.D. Ohio 2017) (declining to enter a money judgment because the prayer for relief in the complaint did not seek the remedy and there was a lack of evidence to liquidate the amount to enter a money judgment); Kidd v. Student Loan Xpress, Inc. (In re Kidd), 472 B.R. 857, 864 (Bankr. N.D. Ga. 2012) (recognizing the relief was not sought); Solis v. Asif (In re Asif), 455 B.R. 768, 798 (Bankr. D. Kan. 2011) (plaintiff failed to prove she was entitled to money judgment); Medlock v. Meahyen (In re Meahyen), 422 B.R. 192, 203 (Bankr. D. Minn. 2010) (abstaining from money judgment despite the plaintiff's request); MBNA Am. Bank, N.A. v. Hostetter (In re Hostetter), 320 B.R. 674, 687 n.11 (Bankr. N.D. Ind. 2005) ("[Plaintiff] is free to pursue collection of its nondischargeable debt in a court other than this one.").

### D.  Madison is Entitled To Prejudgment Interest And Attorney's Fees.

Finally, in Madison's proposed findings of fact, Madison indicated that it is entitled to $613,058.70 in prejudgment interest and is also entitled to attorney's fees. Dkt. No. 121. Unlike Jerry Marsh, Robert Marsh was not a party to the Master Agreement or the Guaranty, which allowed for attorney's fees and interest.  However, Request for Admission 64 admitted that Madison is entitled to attorney's fees from Robert Marsh.  Request for Admission 65 addressed an obligation to pay prejudgment interest calculated from May 1, 2015. In its proposed findings of fact, Madison indicated that it should be awarded interest at a rate of 10%. Madison indicated that an annual interest rate of 10% of $1,676,162.50, accruing for 1,335 days from June 30, 2016 until February 25, 2020 would result in $613,058.70 in interest. Robert Marsh was not a party to the Master Agreement or Guaranty, and therefore, it is unclear if Robert Marsh should be held to rate of interest referenced in those contracts or to a statutory rate.  The Court received no testimony during the trial concerning the amount of prejudgment interest to which Madison is entitled or the

23

amount of attorney's fees incurred. Because no argument was made by the parties concerning the correct interest rate or accrual date, the Court will require the parties to submit a proposed calculation of prejudgment interest and authority to support the requested amount. Of course, Madison can waive interest and attorney's fees.

The Supreme Court has stated, "Once it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge." Cohen, 523 U.S. at 218. Therefore, any attorney's fees, interest, and costs permitted are also non-dischargeable in bankruptcy. Id. at 223. Pursuant to Fed. R. Bankr. P. 7054(b)(2), a request for attorney's fees must be made by motion, but costs may be awarded without a motion pursuant to Fed. R. Bankr. P. 7054(b)(1). The Court will therefore award Madison its costs as the prevailing party, but will decline to consider attorney's fees at this time.

## **CONCLUSIONS OF LAW**

1. Madison is not entitled to sanctions against Robert Marsh for spoliation of evidence.

2. Provisional Exhibit A and Provisional Exhibit B and testimony concerning those documents are not admitted into evidence.

3. Robert Marsh is vicariously liable for the debt resulting from his conspiracy with Jerry Marsh to defraud Madison.

4. Robert Marsh's debt to Madison in the amount of $1,676,162.20 related to U.S. Bank is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

5. Robert Marsh's debt of $3,467.00 related to Cargill/Ardent Mills is non-dischargeable under 11 U.S. C. § 523(a)(2)(A).

6. Madison's prejudgment interest and costs and attorney's fees are established as non-dischargeable.

# ORDER

For the reasons stated above,

**IT IS HEREBY ORDERED:**

1. The debt owed to Madison Resource Funding Corp. in the amount of $1,676,162.20 plus interest and costs related to U.S. Bank is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and excepted from the discharge in Robert Marsh's bankruptcy case, No. 18-43273.

2. The debt owed to Madison Resource Funding Corp. in the amount of $3,467.00 plus interest and costs related to Cargill/Ardent Mills is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and excepted from the discharge in Robert Marsh's bankruptcy case, No. 18-43273.

3. Counts II and III of the Complaint are dismissed.

4. Madison shall submit a proposed calculation of prejudgment interest and authority to support its proposed calculations and whether it waives the Cargill amount of $3,467.00 as a non-dischargeable debt by October 7, 2020. Robert Marsh shall have until October 14, 2020 to file a response on the prejudgment interest issue only.

5. A hearing, if necessary, on the interest issue will be held on October 15, 2020 at 2:30 PM if the parties have not agreed to collection of prejudgment interest.

By the Court:

Dated: _September 30, 2020_

/e/ William J. Fisher

William J. Fisher
United States Bankruptcy Judge